In the Matter of ALEXANDER JADICK, Appellant, *v.* BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF BEACON, Respondent.

Second Department, June 24, 1963.

154

*William H. Pearse* for appellant.

*Reginald H. Davies* (*Lloyd L. Rosenthal* of counsel), for respondent.

*John E. Glenn* for New York State Teachers Association, *amicus curiæ*.

CHRIST, J.  As of September, 1955, the respondent Board of Education revised its secondary school system.  Theretofore such system embraced a high school, consisting of grades 7 to 12, inclusive.  Under the revision, a junior high school was created, consisting of grades 7, 8 and 9, and the former high school was continued as the senior high school for grades 10, 11 and 12.  Since that time, both schools, as thus constituted, have continued to operate.  The elementary school, which embraced grades 1 to 6 inclusive, was unaffected by the revision.

Pursuant to a contract with the respondent, petitioner was appointed to serve as principal of the junior high school from the time of its inception; and he served in that position until the effective date of the respondent's resolution, dated August 8, 1961, which abolished the position effective August 10, 1961. The resolution also stated that the duties and responsibilities

of that position were transferred to and consolidated with those of the principal of the high school.

Since the petitioner had served in his junior high school position for more than three years — a period longer than the maximum period required by law for a probationary term — it is unquestioned that under the statute (Education Law, § 2509, subds. 1, 2) he acquired tenure rights at the end of the third year; that is, he could not thereafter be removed from his position except for cause, after a hearing, and upon a majority vote of the Board of Education. It is also undisputed that the respondent's abolition of the position was lawful (Education Law, § 2503, subd. 5) and that, thereupon, the petitioner, under section 2510 of the Education Law, became entitled to certain rights with respect to employment in the respondent's school system.

The petitioner, relying on subdivisions 2 and 3 of section 2510, contends that, when his position was abolished, the then incumbent of the position of principal of the senior high school should have been released and that he, the petitioner, should have been given that position on the ground that the two positions were "similar" and within the same "tenure" and that he had "seniority" over the said incumbent and greater "length of service in the system" within the meaning of these terms as used in the said subdivisions.

Petitioner instituted this proceeding to enforce his asserted rights. The matter was referred to an Official Referee, who, after conducting a hearing and taking the proofs of the parties, made the order under review, dismissing the proceeding.

The foregoing statutory provisions are parts of article 51 of the Education Law, which applies to the school district here in question, the same being a city school district of a city of less than 125,000 inhabitants (see § 2501). Section 2510 of the statute provides that "[i]f the board of education abolishes an office or position and creates another" one of the duties of which are "similar to those performed in the office or position abolished, the person filling such office or position at the time of its abolishment shall be appointed" to the newly-created one "without reduction in salary or increment" (subd. 1); that, upon the abolishment of a position, "the services of the teacher having the least seniority in the system within the tenure of the position abolished shall be discontinued" (subd. 2); and that, upon such abolishment or upon the consolidation of an office or position "with another position without creating a new position, the person filling such position at the time of its abolishment or consolidation shall be placed upon a preferred eligible

list of candidates for appointment to a vacancy that then exists or that may thereafter occur in an office or position similar to the one which such person filled "; and the " persons on such preferred list shall be reinstated or appointed to such vacancies in such corresponding or similar positions in the order of their length of service in the system at any time within four years from the date of abolition or consolidation of such office or position " (subd. 3).

It was established by the pleadings that the petitioner, prior to his appointment as principal of the junior high school, had been serving as a teacher in the high school; that the contract appointing him to the position of principal stated that he would be entering into " a new tenure area "; and that the respondent thereafter granted him tenure in that " new " area as of June 30, 1958; that the petitioner has also served as principal of respondent's Summer high school; that he served as acting principal of the senior high school from September 1, 1959 to June 30, 1960; that a vacancy in the position of principal of the senior high school was filled by appointing a Dr. Bishop to said position as of July 1, 1960; and that when the position again became vacant a Mr. Whearty was appointed thereto as of February 1, 1961. It is also admitted by respondent (in respondent's answer) that, at each of the respective times of the appointment of Dr. Bishop and Mr. Whearty, the petitioner had applied for the position thus filled. Mr. Whearty still held the position in the Spring of 1962, when the hearing in the instant proceeding was held, but the petitioner's brief informs us that Mr. Whearty left the position soon thereafter and that the position was again filled, this time as of July 1, 1962, by the appointment of another person, " a new entrant ", in respondent's school system.

The Legislature has not supplied any definitions or express standards for implementing the stated statutory verbiage, i.e., " within the tenure of the position abolished ", and " new position " " similar " or " corresponding " to an abolished or consolidated position. However, the State Commissioner of Education has made determinations in specific cases concerning the first-stated phrase (" within the tenure of the position abolished ") as used in the provisions which are now contained in subdivision 2 of section 2510 of the statute (see Matter of Ducey [Bd. of Educ. of City of Yonkers], 65 N. Y. St. Dept. Rep. 65; Matter of Feldbauer [Bd. of Educ. of City of Yonkers], 65 N. Y. St. Dept. Rep. 68; Matter of Trani [Bd. of Educ. of Cent. School Dist. No. 1, Towns of Hyde Park, etc., Dutchess County], No. 6539, Sept. 19, 1958 [1 Ed. Dept. Rep. 184]). The Commissioner has also promulgated a formal rule on the subject of

tenure classifications (see Law Pamphlet 11 of The Division of Law of the State Department of Education, entitled " Tenure and Salaries of Teachers," pp. 9–10 [1953]) ; and the Court of Appeals has forcefully indicated that such determinations and rules of the Commissioner should be applied by the courts (*Matter of Becker* v. *Board of Educ.*, 9 N Y 2d 111).

Rulings of the Commissioner with respect to specific and separate tenure areas were followed in *Becker* (*supra*) and in *Matter of Fafard* v. *Board of Educ. of City of New Rochelle* (71 N. Y. S. 2d 400, affd. 273 App. Div. 788, motion for leave to appeal denied 273 App. Div. 857). The caveat of the Court of Appeals in *Becker* goes even beyond the long-standing rule, which has been specifically applied to opinions of the Commissioner of Education, that: " The interpretation of a statute by an administrative agency charged with its enforcement and administration is always given great weight " (*Matter of Nyboe* v. *Allen*, 7 A D 2d 822).

*Matter of Ducey* (65 N. Y. St. Dept. Rep. 65, *supra*) and *Matter of Feldbauer* (65 N. Y. St. Dept. Rep. 68, *supra*) were decided on the same day in 1943; and both dealt with the statutory provisions that now constitute subdivision 2 of section 2510 of the Education Law. At that time they constituted subdivision 2-a of section 881 of the Education Law, which was applicable to all cities. In *Ducey* (*supra,* p. 65), it was held that the statutory phrase in question (" within the tenure of the position abolished ") " has a specific and technical meaning "; and, after noting that tenure for teachers (including principals) was established by chapter 786 of the Laws of 1917, it was further held that since then " tenure areas or classifications have been established," that is, " teachers secure tenure in the particular classification to which they are appointed, for instance, as an elementary teacher, high school teacher, assistant to principal, principal, etc."

In *Feldbauer* (*supra*, p. 69) the Commissioner added that: " Teachers of special subjects, such as Art, Music, Physical Training, etc., have a classification of their own ", and that, depending on the factual situation in each case, the tenure area of a special subjects teacher may be confined to either elementary or high school levels or may cover the entire system of a school district; but he expressly declined to add to the area distinction which was based on the level of school (elementary or high school), another such tenure area, namely, for the junior high schools. As to teachers in junior high schools generally, he held that the practice has been and would remain that any such teacher's tenure area was either in the elementary field

or in the secondary field; that it would be in the one of those two fields in which the teacher devoted the majority of his time; and the Commissioner noted that it is not too difficult to discover in which of those two fields a teacher in a junior high school has earned tenure. In support of this conclusion the Commissioner observed that the statute governing the subject of apportionment of moneys to school districts (then section 491 of the Education Law) followed the same plan, that is, a distinction was made in that section for computations on the basis of student attendance. A formula was established concerning attendance in elementary school different from that relating to attendance in the secondary field; attendance in the seventh and eighth grades of junior high schools was counted as being in the elementary field; and attendance in the ninth grade in such schools was deemed to be in the secondary field.

The stated rule in the above-mentioned Law Pamphlet 11 of 1953 continued the limitation of the *Ducey* and *Feldbauer* cases (*supra*) with respect to school-level divisions. It stated: "Tenure classifications naturally fall into divisions of secondary (grades 9–12) and elementary (grades 1–8) teachers, principals, supervisors, directors, etc."

Subsequently, in deciding the *Trani* case (No. 6539, Sept. 19, 1958, *supra*), the Commissioner discarded the policy of non-recognition of a separate tenure area for the junior high school level. He noted that since the ruling in *Feldbauer* (*supra*), the statutory formula governing financial aid by the State to school districts (former section 491 of the Education Law [present section 3602]) had been changed (by the addition of former section 491-a [present section 3603]) so as to fix a break-off point between elementary and secondary schools, for the purpose of monetary computation, at the end of grade 6, instead of at the end of grade 8; and that the statutes governing salaries (former section 883, and later the former section 3102, of the Education Law) had been changed (by L. 1951, ch. 756, including the enactment of present section 3103) so as to remove the distinction (insofar as salary schedules were concerned) between teachers in elementary and high schools. Because of these statutory changes, the Commissioner stated that there was "no longer a basis for following the rule as laid down in the Feldbauer case;" and he ruled that thenceforth the elementary tenure area would apply to grades 1 through 6 and that the secondary tenure area would apply for grades 7 through 12 "where in fact such situation exists," but that, where a Board of Education has established a junior high school for grades 7, 8 and 9, and a senior high school for grades 10, 11 and 12, a

separate tenure area would apply to each of such secondary schools.

The *Trani* case (*supra*) involved a person who, within one school district, had been an elementary school principal for two years and who thereafter had been principal of the junior high school for three years, and to whom tenure had been denied by the Board of Education before the end of his third year of service in the junior high school. Upon these facts, the Commissioner held that his revised rulings as to tenure areas, which he had discussed in their relationship to teachers, " would follow in respect to the principalship of each such school organization." However, he added the proviso that this new policy as to tenure areas was not to be applied retroactively but only to new appointments thereafter made, in order not to deprive any teacher or principal of a tenure status theretofore acquired by him under the old policy. Applying these principles to the facts concerning the person involved in that case, the Commissioner ruled that his tenure area was in the elementary level; that such status gave him the right to continue as principal of the junior high school in which he had served; and that he also enjoyed junior high school principalship tenure dating from his appointment as an elementary school principal.

In *Becker* (9 N Y 2d 111, 115, *supra*), the court accepted generally the Commissioner's adoption of the system of tenure area classifications, and specifically applied the portion of the Commissioner's formal rule (enunciated in the said Law Pamphlet 11) that, upon being lawfully transferred to a position " in a different tenure area," a teacher who has acquired tenure " begins a new probationary period in the new area."

In *Fafard* (273 App. Div. 788, *supra*), the court specifically applied the formula set forth by the Commissioner in the *Feldbauer* case (65 N. Y. St. Dept. Rep. 68, *supra*), for determining the tenure area of teachers who, in junior high schools, had devoted the majority of their time in elementary grades. The case was decided before the Commissioner's decision in the *Trani* case (*supra*) which changed that formula.

We do not see how the petitioner can escape application to his situation of these rulings by the Commissioner as to tenure areas, especially in view of the holding of the Court of Appeals in *Becker* (*supra*). On the basis of these rulings, the area in which the petitioner had tenure as a principal, as of the time he acquired such tenure, i.e., on June 30, 1958, prior to the *Trani* decision, would be, under the *Ducey* and *Feldbauer* decisions, either in the elementary field or the secondary field, depending on whether he devoted the majority of his time in the former

or in the latter field. This poses a factual question (subject, however, in the event that elementary tenure was thus indicated, to the effect which lack of a certificate permitting him to serve in an elementary school might have on the situation); and, upon the advent of the *Trani* decision, the petitioner also acquired tenure in the new tenure area for junior high schools, retaining at the same time the tenure he previously had acquired, whether it was in the elementary or the secondary level.

As we have seen, the phrase "within the tenure of the position abolished", which is crucial in subdivision 2 of section 2510 of the statute, does not appear in subdivision 3 of the same section. Instead, the key terms in subdivision 3 are "similar" and "corresponding", as between an abolished or consolidated position and another position that is vacant or becomes vacant. However, this merely presents another factual question.

The petitioner contends that, under certain regulations of the Commissioner, a junior high school is a secondary school and cannot be considered as part elementary and part high school; that therefore, as a matter of law, the area in which he acquired tenure was on the secondary school level; and that, accordingly, the respondent was mandated by section 2510 of the statute, to place him in the position of principal of the senior high school, in view of his seniority over the incumbent in that position. Petitioner argues that the identical problem here presented was resolved in a decision favorable to his position in *Matter of Taylor* v. *Board of Educ. of City of New Rochelle* (184 Misc. 210, mod. on other grounds 269 App. Div. 905, affd. 295 N. Y. 882).

The regulations upon which the petitioner relies are referred to in his petition as parts of article XV (entitled "Teachers Certificates") of the Regulations of the Commissioner of Education. Section 116 thereof contains definitions of the terms used in that article. The definition of "secondary school" is set forth in subdivision 22 of section 116, as follows: "'Secondary school' means a school of academic grade between the elementary school and the college or university," and "Secondary schools shall be graded as junior high schools (organized unit including grades 7–9), middle high schools (one year of high school work above the eighth grade), high schools (organized unit including grades 7–12, 9–12 or 10–12), industrial high schools (* * *), technical high schools (* * *)" (see 8 NYCRR* 80.1 [22]). Sections 127, 128 and 129 of the regulations respectively set forth the requirements to make a candidate

---

* N. Y. Off. Comp. of Codes, Rules & Regulations.

eligible for a certificate authorizing him to serve as a principal of the following schools: "a secondary school, other than a vocational school"; "a vocational high school, other than a technical school"; and "a technical high school" (see 8 NYCRR 80.11, 80.12, 80.13). Parenthetically, no one may be employed as a teacher (or principal) who is not in possession of an appropriate certificate issued by the Commissioner (Education Law, §§ 3001, 3004, 3006, 3008). The pleadings in this case establish that the certificate under which the petitioner had served as principal was one issued to him under section 127 of the regulations, permitting him to serve as principal of "a secondary school, other than a vocational school."

The *amicus curiæ* in this case points out that with respect to the issuance of principal certificates, section 127 of the regulations makes no classification or distinction on the basis of whether the certificates are intended to be utilized for service in a junior or in a senior high school, as to eligibility requirements or form. On the other hand, the *amicus* points out that the eligibility requirements for such a certificate, as set forth in that section, do differ from those for a certificate for service as principal of an elementary school, which are covered in section 126 of the regulations (8 NYCRR 80.10).

The *amicus* also draws our attention to the following portions of section 170 of the regulations, which section is part of article XXI (entitled "Secondary Schools"): in subdivision 1 (entitled "The curriculum"), provisions as to curriculum are set forth and are expressly made applicable, in subdivision (d), to "the junior high school (or grades 7, 8 and 9 in the six-year secondary school)"; and in section 100.2 (entitled "Organization and administration"), requirements for "high school" graduation are set forth in subdivision (a), and express reference is made therein to the number of minimum units required "in grades 9 to 12" and to the lesser number of such units required "in the senior high school, grades 10 to 12"; and it is further stated in subdivision (b) of section 100.2 that nothing in those provisions "shall prevent a board of education from making such curriculum adaptations as are necessary to meet local needs and conducting such experimentation as may be approved by the commissioner" (8 NYCRR 100.1[d]); *id.*, 100.2[a][b]). On the basis of subdivision a of section 100.2 it is claimed that "the high school is recognized as the whole secondary unit and grades 10 to 12 are classified as the senior high school."

Reliance on the foregoing provisions of the regulations is, in our opinion, misplaced. All that they indicate, so far as here applicable, is that the terms "high school" and "senior high

school '' are used interchangeably in the regulations (see § 116, subd. 22 and § 170, subd. 2 [a]), and that while both a junior high school and a high school (or senior high school), and even other types of high schools, are secondary schools, no one type of such schools is the same as any other type of such schools; and that a certificate authorizing one to serve as a principal of a secondary school (other than a vocational school) is applicable to a junior high school or to a high school or senior high school principalship.

However, it does not follow that a principal who is certified to serve as such in more than one type of secondary school, and gains tenure in one type of such school, thereby acquires tenure in all other types of such school covered by his certificate. We do not read such provisions of the regulations as having been intended to enter the subject of tenure areas at all. As we understand it, a certificate may entitle one to serve in more than one position, but the licensee acquires tenure only in the specific position in which he has earned the tenure by service sufficient in point of time and of quality.

Nor do we regard the *Taylor* case (184 Misc. 210, mod. on other grounds 269 App. Div. 905, affd. 295 N. Y. 882, *supra*) as precluding affirmance of the order under review. That case arose out of the abolition in 1940 of the City of New Rochelle's three junior high schools, which had included grades 7, 8 and 9, and the adoption of a plan of seven years of elementary school and five years of high school. (*Fafard* [71 N. Y. S. 2d 400, affd. 273 App. Div. 788, motion for leave to appeal denied 273 App. Div. 857, *supra*] arose out of the same New Rochelle school reorganization.) Mr. Taylor had held the position of supervising principal in one of the schools abolished at that time. Thereafter, a vacancy in the position of principal of one of the high schools in that city was about to occur. Taylor instituted the proceeding to obtain an adjudication that he was entitled to be appointed to that vacant position on the theory that, under the then extant subdivision 3 of section 881 of the Education Law (similar to present § 2510, subd. 3), that position and the same position in every other secondary school in that city were similar to the position he had held. The two persons who had held supervising principalships in the two other abolished schools were not involved. They had had seniority over Taylor, but they had previously been promoted. The Special Term, which held in favor of Taylor, relied on the above-mentioned subdivision 22 of section 116 of the Commissioner's regulations to the effect that both the junior and the senior high schools were secondary schools. Accordingly, the Special Term found that

the principalships in both such schools were alike in "fundamental essential characteristics" and specifically in their titles and in their requisites concerning executive ability. The modification by this court was with respect to matter that is not presently relevant. To all intents and purposes, this view of the Special Term was not disturbed either by this court or by the Court of Appeals on the successive appeals.

The *Taylor* case is clearly distinguishable. In the first place, Taylor did not claim any rights under the statutory provision in subdivision 2-a of the then extant section 881 of the Education Law (now subdivision 2 of section 2510 of that statute) which is invoked by the petitioner. Taylor based his claim only on the statutory provisions in subdivision 3 of said section 881 (which are now in subdivision 3 of present section 2510), i.e., that the positions in question were "similar" or "corresponding". In other words, he did not claim that the position to which he aspired was "within the tenure of the position abolished", as that phrase is used in the statute. Accordingly, the court in *Taylor* was not concerned with and did not consider the question of tenure areas and the various rulings of the Commissioner on that subject. In this connection, it is significant that in *Fafard* (*supra*), which arose out of the same school reorganization — the petitioners in *Fafard* were teachers in the abolished junior high schools whose salaries were reduced on their transfer to elementary schools — the court did give consideration to the Commissioner's rulings on the subject of tenure area, and on the strength thereof made the incidental holding that the tenure classification of those teachers was in the elementary area.

Further, there is nothing in *Taylor* to indicate that, no matter what the factual situation may be in any school district, the principalship of a junior high school is similar to the principalship of a senior high school. There the court was dealing with a factual situation different from the instant one. There it was the *school* (junior high) that was abolished; here the abolishment is not of the school but of a *position in* the school. There, the majority (two-thirds) of the grades of the junior high school (grades 8 and 9) were put into the new high school unit (grades 8–12), and only grade 7 was put into the new elementary school unit. Thus, it could be said that Taylor had devoted the majority of his time in the grades of the junior high school which the New Rochelle Board of Education regarded as properly being in the high school.

In addition, we do not believe it was proper for the court in *Taylor* to place reliance on the definition of the term "secondary school" in subdivision 22 of section 116 of the Commissioner's

regulations. As stated, that definition is not to the effect that a junior high school is the same as a senior high school, although both are secondary schools; and the subject matter to which that definition pertains is teachers' certificates and not tenure areas or similarity of positions.

We turn now to the proofs that were adduced at the hearing. The following facts were established by the witnesses:

Both the junior and senior high schools were conducted in the same premises, consisting of two buildings which were joined together; and some of the rooms or parts of the premises were used for both schools, viz., art, shop, general science and library rooms. Under the circumstances, co-operation between the principals of the two schools was a necessity. As to control of the student body of the junior high school in the use of the premises, the principal of that school exercised such control as to grades 7 and 8, but as to grade 9 he exercised such control only in conjunction with the senior high school principal. The duty of aiding the Superintendent of Schools in scheduling the use of the building for " outside activities and functions " was that of the high school principal, although, with respect to such matters, the superintendent consulted both principals. The duties of the principals of the two schools were the same as to matters of curriculum and as to their relationship with teachers and students of the respective schools; and each principal consulted with the superintendent concerning the preparation of the budget for his school.

In essence, the work of all principals, including the principals of elementary schools, covers similar areas of responsibility, except that elementary school principals are not required to have training in the area of extracurricular activities, such as sports, socials and clubs.

Taken together, there were more students in grades 7 and 8 than in grade 9. Students in grades 7 and 8 were taught under a " preset curriculum ", but those in grade 9 were permitted to some extent to make elections as to certain subjects in the curriculum. Because of the " more advanced level " as one moves " upwards ", the " curriculum body " in a senior high school is different from that in a junior high school. The petitioner's principal's certificate was for a secondary school. He himself testified that he spent more time " taking care of 9th grade pupils, arranging for guidance classes, etc.," than he " did in the 7th and 8th grades," but he admitted that he was unable to break down " the percentage of day " he spent with the 9th grade as distinguished from the other two grades.

The learned Official Referee found that "the sole similarity" of all principalships, whether they be in elementary, junior high or senior high schools, "involved the performance of some common duties," but that "beyond that" the position which the petitioner had held as principal in the junior high school was not "primarily a secondary school principalship within the meaning of the *Fafard* case, *supra*" and was not "in its duties and areas of responsibility * * * similar to that held by the high school principal." We take this to mean that the position of principal of the senior high school is not "within the tenure of the position abolished" (the petitioners' junior high school principalship), as that term is used in subdivision 2 of section 2510 of the Education Law, and that it is not "similar" or "corresponding" to the petitioner's abolished position, as those terms are used in subdivision 3 of that section. In our opinion, the evidence supports such findings. In any event, absent such findings, we would be required to make them.

The fact that the petitioner acquired tenure for a position (as principal of an elementary school) for which, for aught that appears, he never possessed a certificate of qualification, does not require a different result. In the first place, we believe that fact to be irrelevant. Further, when the Commissioner made his ruling in *Feldbauer* (65 N. Y. St. Dept. Rep. 68, *supra*), in which he declined to sanction a tenure area specially for junior high schools, he apparently did not give consideration to the possibility of the discordance which we are here discussing *in passim*. Had he done so, he might have determined at that time to create a tenure area for junior high school personnel and to limit to that area the tenure which could be acquired by such personnel in such service. We have no reason to believe that the Commissioner would have chosen the alternative of ruling that the tenure area of such personnel arbitrarily followed the certificates they held, so that some of them would have tenure in the elementary area and others in the high school area.

The Official Referee also stated in his opinion that the respondent has in fact placed the petitioner's name upon a preferred eligible list for appointment to the position of either junior high school principal or supervisor of grades 7–9. We assume that the Referee declined to grant to the petitioner the relief of having his name thus placed on such an eligible list (under subd. 3 of § 2510) only because the respondent had already accorded him the same. Concerning this the petitioner makes no complaint on this appeal.

In view of the foregoing considerations, the order should be affirmed, without costs.

BELDOCK, P. J. (dissenting). The majority is of the opinion that the petitioner obtained tenure as a principal in the elementary school field on June 30, 1958, despite the fact that he never had a certificate of qualification in that field and could not have been appointed to such a position. The majority is also of the opinion that petitioner did not obtain tenure as a principal in the secondary school field, in which field he concededly had a certificate of qualification and in which field he held a position for six years. I cannot subscribe to such an incongruous holding.

In my view, there are two questions presented on this appeal: (1) Is the position of principal of a junior high school "similar" to that of a principal in the senior high school; and (2) Did petitioner obtain tenure as a principal in the secondary school field on June 30, 1958? If the answer to both questions is in the affirmative, then petitioner was entitled to appointment as principal of the Beacon High School on August 10, 1961 (Education Law, § 2510, subds. 2, 3). If the answer to the first question only is in the affirmative, then petitioner was entitled to appointment as principal of the Beacon High School on July 1, 1962 (Education Law, § 2510, subd. 3).

A statement of the facts in chronological order will be helpful in the expression of my views:

On February 18, 1954 petitioner was granted a certification as a secondary school principal. This certification entitled him to appointment as principal in any high school, either junior or senior. It did not entitle him to appointment as principal of an elementary school.

On August 9, 1954 the respondent separated the junior high school from the senior high school. On August 11, 1954 respondent appointed petitioner as principal of the junior high school, effective September, 1955. On June 30, 1958 petitioner's probationary period ended and he was granted tenure.

From September 1, 1959 to June 30, 1960, petitioner served as acting principal of the senior high school by appointment of the respondent. Effective July 1, 1960, respondent appointed Dr. Bishop as principal of the Beacon High School. Effective February 1, 1961, respondent appointed Mr. Whearty as principal.

On August 10, 1961, respondent abolished the position of junior high school principal and consolidated its functions with that of principal of the senior high school. On August 15, 1961, petitioner demanded that he be appointed principal of the senior high school; and on August 25, 1961 he instituted this article 78 proceeding to compel such appointment.

On July 1, 1962 a new principal of the Beacon High School was appointed. The order dismissing this proceeding was entered on July 18, 1962.

The statute (Education Law, § 2510, subd. 3) provides that, if an office or position is abolished or consolidated with another position without creating a new position, the person filling such position at the time of its abolishment or consolidation shall be placed upon a preferred eligible list of candidates for appointment to a vacancy that then exists or that may thereafter occur in an office or position similar to the one which such person filled, without reduction in salary or increment, provided the record of such person has been one of faithful, competent service in the office or position he has filled.

That petitioner's record was one of faithful, competent service in the position of principal of the junior high school prior to the time of the consolidation of such position with the position of senior high school principal on August 10, 1961, is not disputed.

In *Matter of Taylor* v. *Board of Educ.* (269 App. Div. 905, affd. 295 N. Y. 882) it was held that the positions of principal of junior high school and principal of senior high school were similar as a matter of law, based on evidence that: (a) the salary schedules for principals of both schools were the same; (b) the principal's certificate was valid for service as principal of a public secondary school; (c) the Regulations of the Commissioner of Education (§ 116, subd. 22) defined a junior high school as a secondary school; and (d) the same regulations (§ 127) provided for the same qualifications in education and experience for certification as principal of both types of school. This court held it to be immaterial that, in comparison with a junior high school principal, the duties of a senior high school principal consisted in supervising a greater number of employees, custodial help, guidance directors, teachers, and pupils. This court pointed out that the difference in size of the school, or in the number of pupils registered, or the attendance, or the more extensive curriculum in the senior high school did not establish dissimilarity in the positions. This court also held that the Board of Education itself, by its own action: (a) in requiring the same qualifications for both junior and senior high school principals; (b) in requiring the same State certificate; and (c) in maintaining the same salary schedules for the position of principal in other secondary schools in its system, has established that all secondary school principalships in its system are similar.

The same facts in the case at bar mandate the same determination as in the *Taylor* case. That respondent was of the opinion that the positions of principal of junior and senior high school were similar, is also clear from the fact that respondent appointed petitioner as acting principal of the senior high school from September 1, 1959 to June 30, 1960, and from the fact that it consolidated the senior and junior high school principalships and placed one man in charge of the combined school.

Since petitioner's position as junior high school principal was similar to that of senior high school principal, the petitioner, on August 10, 1961 (when the position of junior high school principal was abolished and its functions consolidated with that of senior high school principal) was entitled to be placed upon a preferred eligible list of candidates for appointment to a vacancy which then existed or which might thereafter occur in the position of senior high school principal (Education Law, § 2510, subd. 3).

The next question is that of tenure. Subdivision 2 of section 2510 of the Education Law provides that, whenever a Board of Education abolishes a position, the service of the teacher having the least seniority in the system within the tenure of the position abolished shall be discontinued. In my opinion, this means that, if petitioner had obtained tenure as principal of a secondary school and had such tenure on August 10, 1961, respondent was required: (a) to discontinue the services of Mr. Whearty as principal of the Beacon High School because the latter had less seniority than petitioner; and (b) to appoint petitioner to the principalship.

The predecessor of present subdivision 2 of section 2510 of the Education Law was chapter 754 of the Laws of 1940 (then Education Law, § 881, subd. 2-a). In 1943 the Commissioner of Education decided (*Matter of Feldbauer*, 65 N. Y. St. Dept. 68) that tenure classifications naturally fell into secondary and elementary level of teachers, principals, etc. The decision in that case was that the breaking point between elementary and secondary levels was at the eighth grade. The basis for such decision was: (a) that State aid was apportioned to school districts based on the elementary school field (then regarded as grades 1 through 8) and on the secondary school field (then regarded as grades 9 through 12); and (b) that the salary schedule for teachers broke as between grades 1 through 8, and 9 through 12.

The *Feldbauer* decision was followed in 1947 by *Matter of Fafard* v. *Board of Educ.* (273 App. Div. 788, affg. 71 N. Y. S. 2d 400). There, while the petitioners had certificates only as

elementary school teachers, they were assigned and taught elementary subjects in the seventh and eighth grades in the junior high school for several years. It was held that the petitioners did not thereby become junior high school teachers, and therefore, when the junior high schools were abolished, their positions as junior high school teachers were not abolished since such positions had never been created.

Effective July 1, 1948 the Legislature enacted a statute (L. 1948, ch. 116) which caused the difference between elementary and secondary education to break at the sixth grade by providing that State aid was to be apportioned to school districts based on the elementary level defined as grades 1 through 6, and the secondary level defined as grades 7 through 12.

Effective July 1, 1951, the Legislature enacted a statute (L. 1951, ch. 756) directing that all teachers, whether on the elementary or secondary level, be paid the same salary scale.

Therefore, after July 1, 1951, the two bases for breaking the elementary and secondary levels (for purposes of tenure) at the eighth grade, promulgated in *Matter of Feldbauer* (*supra*), no longer existed. The reasoning of the *Feldbauer* case required that the breaking point between the elementary and secondary levels be now held to be at the sixth grade.

When petitioner received tenure on June 30, 1958, after having served as principal of the junior high school for three years, he could receive such tenure only as a principal of a secondary school. There were no classifications of tenure as principal of elementary school and as principal of high school. The classifications were only principal of elementary school and principal of *secondary* school. Petitioner did not have a certificate of qualification as principal of elementary school. He had never been appointed a principal of elementary school and could not have been so appointed. He had never taught in elementary school. His only assignments had been for 14 years as teacher in the senior high school, and since September, 1955 as principal of the junior high school. Therefore, the only tenure petitioner could and did receive on June 30, 1958 was as principal of a secondary school (cf. *Matter of Taylor* v. *Board of Educ.*, 269 App. Div. 905, affd. 295 N. Y. 882, *supra*).

*Matter of Trani* (No. 6539, decided by the Commissioner of Education on September 19, 1958 [1 Ed. Dept. Rep. 184]) merely created two tenure areas on the secondary level out of what had previously been one tenure area (to wit, tenure in the senior high school and tenure in the junior high school); but it was expressly held that tenure attained prior to the date of the decision was not affected. Applied to this petitioner, the

decision meant that petitioner had tenure not only as a secondary school principal, but also as a junior high school principal.

Since: (a) the positions of junior high school and senior high school principal were similar; (b) petitioner had been granted tenure as a secondary school principal; and (c) Mr. Whearty was then junior in service to petitioner, the petitioner was entitled as of right to be appointed to the position of principal of Beacon High School on August 10, 1961.

In any event, regardless of tenure, petitioner was entitled to the position of principal of the Beacon High School on July 1, 1962, i.e., after Mr. Whearty left the principalship and a vacancy had been created (Education Law, § 2510, subd. 3). The order having been entered on July 18, 1962 after the creation of the vacancy, petitioner should have been granted the appointment at least as of July 1, 1962.

Accordingly, the order should be reversed and the petition should be granted to the extent here indicated.

UGHETTA, HILL and RABIN, JJ., concur with CHRIST, J.; BELDOCK, P. J., dissents and votes to grant the petition to the extent therein indicated, in opinion.

Order affirmed, without costs.